# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

JOSEPH DEION PAGE,                    )
                                      )
    *Plaintiff,*                   )    Case No. 3:25-cv-134
                                      )
v.                                    )    Judge Atchley
                                      )
ARAMARK CORRECTIONAL                  )    Magistrate Judge Poplin
SERVICES, LLC, *et al.*,              )
                                      )
    *Defendants.*                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, a Tennessee Department of Correction ("TDOC") inmate housed in the Morgan County Correctional Complex ("MCCX"), filed a pro se complaint for violation of 42 U.S.C. § 1983 challenging MCCX food and alleging denials of medical care [Doc. 1], two motions for leave to proceed *in forma pauperis* [Docs. 2, 6], two motions regarding the entity Defendants' names [Docs. 7, 8], and a motion to reassign this case [Doc. 10]. For the reasons set forth below, Plaintiff's motions for leave to proceed *in forma pauperis* [Docs. 2, 6] will be **GRANTED**, his motions regarding the entity Defendants' names [Docs. 7, 8] will be **GRANTED**, this action will be **DISMISSED** because the complaint [Doc. 2] fails to state a claim upon which relief may be granted under § 1983, and the motion to reassign this case [Doc. 10] will be **DENIED as moot**.

## I.    MOTIONS FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

As Plaintiff cannot pay the filing fee in a lump sum, his motions for leave to proceed *in forma pauperis* [Docs. 2, 6] are **GRANTED**, and he is **ASSESSED** the $350.00 civil filing fee. 28 U.S.C. § 1914(a). The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average

monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period before the filing of the complaint. 28 U.S.C.§ 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such income exceeds ten dollars ($10.00), until he has paid the full filing fee. 28 U.S.C. § 1915(b)(2). The Clerk is **DIRECTED** to send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's facility to ensure payment of the filing fee.

This memorandum and order **SHALL** be placed in Plaintiff's institutional file and follow him if he is transferred to a different place of confinement.

## II.    ENTITY DEFENDANTS' NAMES

In his motions regarding the entity Defendants' names, Plaintiff seeks to update the Court's docket to name these Defendants as "Centurion of Tennessee, LLC" and "Aramark Correctional Services, LLC." [Docs. 7, 8]. These motions [*Id.*] are **GRANTED** to the extent that the Court has updated these Defendants' names in the style of this memorandum and order, and the Clerk is **DIRECTED** to update the Court's docket to name these Defendants in the same way.

## III.    COMPLAINT SCREENING

### A.    Standard

District courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at

screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Thus, to survive an initial PLRA review, a prisoner complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B.    Complaint Allegations

In his complaint, Plaintiff first states that he seeks to assert claims for violation of his First Amendment rights, breach of contract, violation of his "Eighth Amendment right to safe and nutritiously adequate food," retaliation, and violation of his right to health care. [Doc. 1 at 3]. Plaintiff then states that all Defendants have contracted with TDOC now or in the past. [*Id.* at 4].

To support these assertions, Plaintiff states that from March 3, 2024, to the date of him drafting his complaint, Defendant "Aramark['s] poor food service [has] made [him] sick," that Defendant "Aramark and its staff have continuously denied [his] religious diet after [he] filed grievances and complaints," Defendant "Aramark did not serve Halal food during Ramadan," and Defendant "Centurion refuses to see [him] or give over the counter medication to help with

3

sickness from food." [*Id.* at 5]. Plaintiff also states that he has had "[c]onstant diarrhea, multiple food pois[on]ing[s], gastritis, and spirit[u]al impurity." [*Id.*].

With his complaint, Plaintiff included a number of grievances he filed during his MCCX confinement. [Docs. 1-2–1-7]. In the first such grievance, Plaintiff states that in his two weeks of being housed in "2a" he did not "receive a [h]ot or even lukewarm tray," even though his housing unit has "a warming cart" and TDOC policy provides for "2 hot meals a day." [Doc. 1-2 at 4–5]. TDOC officials rejected this grievance due to Plaintiff's failure to provide details, failure to sign the grievance, and failure to state his requested solution. [*Id.* at 3].

In the second grievance, Plaintiff states that on one occasion, he asked to get his food out of the warming cart, and a prison official informed him that all the food trays were the same temperature because the cart did not work. [Doc. 1-3 at 4–5]. TDOC officials rejected this grievance due to Plaintiff's failure to sign the grievance or state a requested solution. [*Id.* at 3].

In the third grievance, Plaintiff states in relevant part that he and other inmates have not received 2,400 calories per day, the food is served cold, and Plaintiff has complained to Aramark employees. [Doc. 1-4 at 4–5]. Plaintiff also complains about the amount of food provided with religious diets, stating that Monday through Friday, the inmates with religious diets receive three meals a day, which he describes as follows: (1) breakfast includes 2 slices of bread, a scoop of peanut butter or an illegible item, "a dollop of jelly," and cereal and milk; and (2) lunch and dinner include a "scoop of beans," a "scoop [of] vegetables," rice, "and a small scoop of mystery meat." [*Id.* at 5]. Plaintiff complains, however, that on the weekends, the inmates do not receive lunch and instead receive two extra pieces of bread for breakfast. [*Id.*]. Plaintiff then states that the food is making him sick, that a roach ran out of a warming cart on one occasion, that he goes hungry many nights because the food is too "revolting," and that he lost twenty pounds in three months.

4

[*Id.*]. TDOC officials rejected this grievance because of Plaintiff's failure to provide dates, times, and names of persons. [*Id.* at 3].

In the fourth grievance, Plaintiff states that he received food on a dirty tray, and that when an officer then gave an extra food tray, that tray was also dirty, and he again complains about being served cold food. [Doc. 1-5 at 4–5]. The TDOC rejected this grievance because Plaintiff had already filed a grievance about this issue. [*Id.* at 3].

In the fifth grievance, Plaintiff states that on one day, his unit was served dinner more than twelve hours after being served breakfast without being served lunch in between, the inmates did not get extra calories, Plaintiff "strongly feels [they] got shorted on the 'set calorie amount,'" and the food was cold. [Doc. 1-6 at 2–3].

In the sixth grievance, Plaintiff states (1) that on one day, prison officials did not provide him lunch or dinner because Aramark did not provide his religious diet; (2) that he also did not receive lunch the next day; (3) that his cell was subsequently flooded with sewage, but various MCCX officers failed to remove him from his cell despite saying they would do so, and he had to eat eight meals under these conditions and missed 18 prayers; and (4) MCCX violated his "First Amendment right to religious exercise." [Doc. 1-7 at 1–2].

In the seventh grievance, Plaintiff states that on one occasion, he asked a nurse for emergency sick call due to smoke inhalation, but the nurse never came back or sent anyone to check on Plaintiff, and Plaintiff states that this is the second time he asked this nurse for help and she did not provide it. [*Id.* at 3–4]. Plaintiff also states that he turned in 20 sick calls in two months but was not seen even though he is dealing with "constant migraines, back spasms," and other issues that the Court cannot decipher due to the light writing on the document. [*Id.* at 4]. Plaintiff further indicates that when he speaks to nurses about his need for medical care, they all tell him

5

they will refer him or pull his chart. [*Id.*].  Plaintiff additionally claims the food is affecting his health. [*Id.*].

In the eighth grievance, Plaintiff again complains about the temperature and lack of heating of the prison food, states that the food has therefore made him sick, states that Aramark failed a recent inspection, and states that inmates are not getting enough calories. [*Id.* at 5–6].

In the ninth grievance, Plaintiff states that he is scared when he eats meals, that two officers called him a snitch on one occasion, that the risk of someone doing something to his food is high because he is a "snitch," and that he has helped officers so he does not understand why he cannot get transferred. [*Id.* at 7–8].  Plaintiff also sets forth allegations about his parole hearing. [*Id.* at 8].

In the tenth grievance, Plaintiff states that Aramark discriminated against him and other prisoners who follow a religious diet on Thanksgiving by providing those on religious diets the same food they receive on a daily basis, while other prisoners who were not on a religious diet received turkey dressing and other food items, which he states establishes he was not able to celebrate Thanksgiving because he is not Christian. [*Id.* at 9–10].  Plaintiff also states that he has been seeking help from a legal aide, but that request has not been approved and that Aramark practices have caused him mental and physical stress. [*Id.* at 10].

In his eleventh grievance, Plaintiff again states that he has filed numerous sick call requests but has not seen a provider. [*Id.* at 11–12].  Plaintiff then states that he has symptoms of a possible brain injury/concussion, vein complications, and severe nerve pain, and that, at his intake, he told a prison official that he required an "AFO," knee brace, and compression stocking, and a doctor wrote an order for him for an "AFO" for a month only, after which the "AFO" became contraband. [*Id.* at 12].  Plaintiff also states that the only time he has seen a nurse in the pod in which he is housed, which he calls the worst pod in MCCX, is when nurses came to see white inmates, and he

6

states that a nurse told him that the reason that nurses do not come to see inmates in Plaintiff's pod is that "nobody wants to come in here." [*Id.*].

Plaintiff seeks injunctive relief from Defendant Aramark's "unsafe food practice by Aramark and its staff[] [d]ue to potential risks . . . ." and requiring Defendant Aramark to "provide diets that are consistent with religious beliefs." [Doc. 1 at 5]. Plaintiff also seeks monetary damages. [*Id.*]. Plaintiff has sued Aramark Correctional Services, LLC, Centurion of Tennessee, LLC, and both the former and current Aramark site coordinators. [*Id.* at 2–3; Doc. 7; Doc. 8].

### C. Analysis

#### 1. Aramark and Centurion

First, Plaintiff's complaint does not allow the Court to plausibly infer that Defendants Aramark or Centurion may be liable under § 1983 for the incidents alleged in the complaint. For the complaint to state a plausible § 1983 claim against these entity Defendants, Plaintiff must set forth facts from which this Court can plausibly infer that a custom or policy of the entity caused a violation of his constitutional rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding that a plaintiff seeking to hold a private entity liable under § 1983 must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights) (citation omitted). In other words, Plaintiff cannot hold either of these entities liable "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, these entities may be liable only where "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* Such a claim may be based on the following:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) an official with final decision making authority ratifying illegal actions;

7

(3) the existence of a policy of inadequate training or supervision; or

(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

### a.    Aramark

As to Aramark, Plaintiff's allegations primarily arise out of three issues: (1) prisoners receive cold food, which Plaintiff states has caused him to become ill; (2) inmates are not fed sufficient calories or quality food; and (3) he has not received his religious diet on various occasions and did not receive special food on Thanksgiving due to his religious diet. The Court will address these allegations in turn.

First, the complaint does not allow the Court to plausibly infer that Defendant Aramark's custom or policy, rather than acts or omissions of Aramark and/or MCCX employees, is the reason the food at MCCX is served cold. But even if the Court assumes that this was the case, it is not illegal, much less unconstitutional, to serve cold food to prisoners. *Fritts v. Ryner*, No. 3:14-CV-389, 2017 WL 1593473, at *2 (E.D. Tenn. April 28, 2017) ("Cold food is an ordinary incident to prisoner life" (citing *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977)); *Prophete v. Gilless*, 869 F. Supp. 537, 538–39 (W.D. Tenn. 1994) ("Cold food does not pose [] a danger, and thus does not constitute the deprivation of a necessity of life."). And nothing in the complaint suggests that any decisionmaker at Aramark knew that any MCCX food made any prisoner, including Plaintiff, sick for any reason. As such, the Court cannot plausibly infer that Defendant Aramark may be liable under § 1983 based on the fact that Plaintiff has received cold food at MCCX.

Second, Plaintiff does not support his allegation that MCCX prisoners do not receive sufficient calories with any facts from which the Court can plausibly infer that he does not receive sufficient food to sustain his good health, such that this allegation could rise to the level of a

8

constitutional violation. *Cunningham*, 567 F.2d at 659–60 (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). To the contrary, the facts that Plaintiff provides regarding the food he receives at MCCX with his religious diet, while somewhat ambiguous as to the portion sizes, indicate that Plaintiff receives a substantial and well-balanced diet. [Doc. 1-4 at 5 (stating that Monday through Friday, Plaintiff and other inmates on a religious diet receive three meals a day, which Plaintiff describes as follows: (1) breakfast includes 2 slices of bread, a scoop of peanut butter or an illegible item, "a dollop of jelly," and cereal and milk; and (2) lunch and dinner include a "scoop of beans," a "scoop [of] vegetables," rice, "and a small scoop of mystery meat")].

While Plaintiff does claim in a grievance attached to his complaint that he has lost twenty pounds during three months of his confinement due to the food at MCCX, this is not sufficient to allow the Court to plausibly infer that the food at MCCX does not allow Plaintiff to sustain good health, as Plaintiff does not state his weight at his admission to MCCX or after this weight loss, and it appears likely that at least some portion of this weight loss is due to Plaintiff skipping meals because he finds the food "revolting," which is the sentence that precedes Plaintiff's statement that he has lost weight during his MCCX confinement. [*Id.*]. *See Adams v. Hardin Cnty. Det. Center*, No. 3:16-CV-P29-CRS, 2016 WL 2858911, at *6 (W.D. Ky. May 12, 2016) (noting that "[c]ourts have generally held that allegations of weight loss alone fall short of stating an Eighth Amendment claim" and citing cases) (citations omitted).

Moreover, to the extent that Plaintiff seeks relief under §1983 from Defendant Aramark based on his statements in his grievances that the food is "disgusting" and "revolting," these statements are conclusory and therefore fail to allege a plausible constitutional violation, as Plaintiff sets forth no facts from which the Court can plausibly infer that the quality of the food

9

objectively rises to the level of a denial of a life necessity. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("The deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."). Nor does Plaintiff's complaint contain facts indicating that the quality of the food is due to a custom or policy of Defendant Aramark, rather than its employees' or MCCX employees' acts or omissions in preparing the food.

Also, as set forth above, Plaintiff alleges in a grievance that on one day, he did not receive lunch or dinner because Defendant Aramark did not serve his religious diet meal, and he also did not receive lunch the next day. [Doc. 1-7 at 1–2]. Plaintiff additionally claims that on Thanksgiving, the MCCX prisoners who were not on a religious diet received some special food items due to the holiday, but prisoners on a religious diet did not. [*Id.* at 9–10]. Again, however, Plaintiff does not set forth any facts suggesting that (1) the denial of three meals in two days or (2) his failure to receive special food on Thanksgiving were due to a custom or policy of Defendant Aramark, such that the Court could plausibly infer that this Defendant may be liable for these incidents under § 1983.

Moreover, while Plaintiff appears to assert that the denials of his religious diet on various occasions were retaliation for him filing grievances, he again provides no facts to support such a claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (providing that a retaliation claim requires Plaintiff to show: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."). Nor does Plaintiff

provide facts from which the Court can plausibly infer that any alleged retaliation was due to a custom or policy of Defendant Aramark.

### b. Centurion

The only allegations in Plaintiff's complaint filings that the Court can construe as against Defendant Centurion are his allegations that this Defendant refuses to see him or prescribe him medication for his food-related issues, [Doc 1 at 5], and that he has requested medical care on numerous occasions for various reasons, but medical providers have not seen him, and the only time he has seen medical providers come to his pod is for white inmates. [Doc. 1-7 at 4, 11–12]. Again, however, while these allegations are troubling, Plaintiff provides no facts to support a plausible inference that a custom or policy of Centurion caused these alleged denials of medical care or the provision of medical care to white inmates. To the contrary, with regard to the denials of medical care, Plaintiff specifically states that a nurse told him that the reason that nurses do not come to see inmates in Plaintiff's pod, which Plaintiff calls the worst pod in MCCX, is that "nobody wants to come in here." [Doc. 1-7 at 12]. Thus, it appears that the alleged denials of medical care to Plaintiff are the result of staff decisions, rather than any custom or policy of Centurion. Accordingly, Plaintiff does not "nudge[] [these claims] across the line from conceivable to plausible" as to Defendant Centurion. *Twombly*, 550 U.S. at 570.

### 2. Site Supervisor Defendants

Also, as to the Aramark Former and Current Site Supervisors, to the extent that Plaintiff sought to sue these Defendants in their individual capacities, nothing in Plaintiff's complaint or grievances supports a plausible inference that either of these Defendants was personally involved in, authorized, approved, or acquiesced to any violation of Plaintiff's constitutional rights. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that

the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983); *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal quotation marks and citations omitted). Moreover, these Defendants cannot be held liable under §1983 based solely on their supervisory positions. *Iqbal*, 556 U.S. at 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). As such, any claims against these Defendants in their individual capacities are **DISMISSED**.

Also, to the extent that Plaintiff sought to sue the Aramark Site Supervisor Defendants in their official capacities, any such claims are actually against Defendant Aramark. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Thus, they are subject to dismissal for the reasons the Court set forth above regarding Plaintiff's claims against Defendant Aramark.

As such, the complaint fails to state a claim upon which relief may be granted under § 1983 as to any named Defendant, and this action will be **DISMISSED without prejudice**.

## IV.    CONCLUSION

For the reasons set forth above:

1.    Plaintiff's motions for leave to proceed *in forma pauperis* [Docs. 2, 6] are **GRANTED**;

2.     Plaintiff motions to update the Court's docket to name the entity Defendants as "Centurion of Tennessee, LLC" and "Aramark Correctional Services, LLC" [Docs. 7, 8] are **GRANTED** to the extent that the Court has updated these Defendants' names in the style of this memorandum and order, and the Clerk is **DIRECTED** to update the Court's docket to name these Defendants in the same way;

3.     Plaintiff is **ASSESSED** the civil filing fee of $350.00;

4.     The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

5.     The Clerk is **DIRECTED** to provide a copy of this memorandum and order and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

6.     Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983, and it is therefore **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

7.     Plaintiff's motion to reassign this case [Doc. 10] is **DENIED as moot**; and

8.     The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**